**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| PAPST LICENSING GMBH & CO. KG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:15-cv-1095 |
| v. | § | |
| | § | LEAD CASE |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |

## JOINT MOTION SEEKING ENTRY OF A PROTECTIVE ORDER

Plaintiff Papst Licensing GmbH & Co. KG ("Papst" or "Plaintiff") and named
Defendants Apple Inc., LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics
MobileComm USA, Inc., ZTE Corporation, ZTE (USA), Inc., Samsung Electronics Co. Ltd.,
Samsung Electronics America, Inc., Lenovo (United States) Inc., Motorola Mobility LLC,
Huawei Technologies Co., Ltd., Huawei Technologies USA, Inc. (collectively, "Defendants"),
hereafter referred to as "the Parties," file this Joint Motion Seeking Entry of a Protective Order.

## I. INTRODUCTION AND BACKGROUND

By order dated June 6, 2016, this Court ordered the Parties to file their proposed
Protective Order five (5) days before the scheduling conference on June 24, 2016.  Dkt. 49.  On
June 20, the Named Defendants filed an unopposed motion requesting an extension to file the
proposed Protective Order on June 22.  Dkt. 66.  The Court granted the extension on June 22.
Dkt. 76.

The Parties have conferred and have agreed to all terms of a proposed Protective Order
except terms regarding:

- ¶ 9 – Provisions excluding individuals involved in competitive decision-making from accessing attorneys' eyes only information;

- ¶ 10(i) – Provisions limiting the printing of Source Code;

- ¶ 10(j) – Provisions requiring a log of persons who access paper copies of the source code and the location where paper copies are stored;

- ¶ 11 – Provisions limiting the participation of individuals with access to Highly Sensitive Material in proceedings before the U.S. Patent & Trademark Office; and

- ¶ 14 – Provisions preventing the Plaintiff from sharing a Defendant's Designated Material to other Defendants absent permission from the producing Defendant.

Accordingly, the parties hereby submit competing versions of a proposed Protective Order for consideration by the Court.  Plaintiff's proposed Protective Order is attached hereto as Exhibit 1 and Defendants' proposed Protective Order is attached hereto as Exhibit 2.  For ease of reference, disputed language in each proposed Protective Order is indicated in **bold italics**.

## II.  DISPUTE NO. 1: ¶ 9 – Provisions excluding individuals involved in competitive decision-making from accessing certain Protected Material

| Papst's Proposal | Named Defendants' Proposal |
|---|---|
| For Protected Material designated "RESTRICTED -- ATTORNEYS' EYES ONLY," access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b), (e-f), (h-i). | For Protected Material designated "RESTRICTED -- ATTORNEYS' EYES ONLY," access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b), (e-f), (h-i)***; provided, however, that each is not involved in competitive decision-making, as defined by U.S. Steel v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party***. |

### A.  Papst's Arguments

Papst's proposed language is more than adequate to protect against the use of Restricted– Attorneys' Eyes Only ("AEO") material by persons responsible for competitive decision-

making.  Indeed, Papst's proposed language (shown in blackline below) is ***more*** restrictive than the Court's Sample Protective Order because it prohibits disclosure of AEO material to ***any*** in-house counsel (*see* ¶ 5(c)), not only to those in-house counsel who exercise competitive decision-making authority:

> For Protected Material designated RESTRICTED – ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-~~e~~b) and (e-g)~~; provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client~~.

(Sample Order ¶ 9.)   Further, the agreed provisions of the Protective Order contain disclosure obligations that allow producing parties to evaluate whether risk of inadvertent disclosure exists. (Proposed Protective Order ¶ 5(e) (experts).)

Defendants' proposed language precludes disclosure of AEO information to ***all people*** (including outside counsel, experts, and in-house counsel) who are "involved" in "competitive decision-making" as defined in footnote 3 of *U.S. Steel v. United States*, 730 F.2d 1465 (Fed. Cir. 1984).  Defendants' proposal is overbroad, impermissibly vague, and creates opportunity for abuse.  First, the opinion in *U.S. Steel* (which denied a protective order) addresses only in-house counsel; its decision did not apply to others, such as outside experts.  *Id.* at 1466 ("Interlocutory appeal on a certified question arising from a decision of the Court of International Trade (CIT) denying U.S. Steel's (USS) corporate in-house counsel access to confidential information.  We vacate and return.") & 1468 n.3 ("competitive decisionmaking" is "a shorthand for *counsel's* activities . . . .").

Second, the definition of "competitive decision-making" offered by Defendants, when stripped from any applicable factual context, is impermissibly vague as applied to this case. Footnote 3 in *U.S. Steel* states that "competitive decisionmaking" is shorthand for counsel's

"activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."   Under *U.S. Steel*, any identification of people "involved in competitive decision-making" must made on a person-by-person basis and any restriction must be developed in light of each person's "relationship and activities." *Id*. at 1468.  Without this required factual context, Defendants' proposed language is open for abuse, inviting misinterpretation by an opposing party to apply to conduct that is plainly allowed, simply to gain a tactical advantage.   For example, under Defendants' proposed language, a Party improperly may claim that outside counsel's advice on damages or a settlement demand qualifies as "participation" in the client's "pricing" decisions.   In contrast, Papst's proposed language provides ample protection against disclosure, is more restrictive than this Court's Sample Protective Order, and does not create opportunity for abuse.

### B.  Defendants' Arguments

Courts recognize that access to discovery should be denied to "competitive decision-makers" who may inadvertently use the material for inappropriate purposes. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, No. 6:07-cv-346, 2008 WL 5634214, at *7 (E.D. Tex. Mar. 14, 2008). Confidential materials, especially those materials that are marked attorneys' eyes only, should not be disclosed to individuals who are involved in competitive decision-making activities, such as patent acquisition.  An individual should not be able to study a Defendant's highly sensitive attorneys' eyes only materials, and then advise that Defendant's competitors on patent monetization or acquisition strategies.   The risk is too high that even a well-intentioned individual will not be able to segregate and suppress in his or her mind what was learned from studying Defendants' highly confidential attorneys' eyes only internal documents when advising

an employer or other clients on competitive issues. *See In re Deutsche Bank Trust*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).

The Defendants' proposal for ¶ 9 is in line with that set forth in the protective orders entered after the Court's order resolved such disputed language in *EON Corp. IP Holdings, LLC v. LG Electronics MobileComm USA, Inc.*, Case No. 6:12-cv-941-RWS-JDL, Dkt. 31 at ¶ 9(b)(i) (E.D. Tex. July 15, 2013).[1]  The entered protective order in the *EON* case includes the similar limitation that competition decision-making be defined by *U.S. Steel Corp.*, 730 F.2d at 1468 n.3. *Id.*, Dkt. 27 at 1 (July 8, 2013); *id.*, Dkt. 31 at ¶ 9(b)(i).[2]  Likewise, after the Court resolved the dispute in the defendant's favor, a similar provision citing *U.S. Steel* was also incorporated in the protective order entered in *ContentGuard Holdings, Inc. v. Apple, Inc.*, Case No. 2:13-cv-1112-JRG, Dkt. 152 at ¶ 9(d)(i) (E.D. Tex. June 6, 2014).[3]  Papst proposal that competitive decision makers within Papst or the Defendants can learn of "RESTRICTED – ATTORNEYS' EYES ONLY" information should be rejected consistent with established law and the practice of this Court.

### III.    DISPUTE NO. 2: ¶ 10(i) – Provisions limiting the printing of Source Code

| Papst's Proposal | Named Defendants' Proposal |
| --- | --- |
| The receiving Party may print **up to 15% of the code produced** for each accused product, unless otherwise agreed by the parties, whose reasonable request for agreement shall not be withheld. | The receiving Party may print **no more than 200 pages** for each accused product, unless otherwise agreed by the parties, whose reasonable request for agreement shall not be withheld. |

---

[1] Thompson Decl., Ex. B.

[2] Thompson Decl., Exs. A-B.

[3] Thompson Decl., Ex. C.

### A.  Papst's Arguments

Defendants' proposal to limit printing of Source Code to 200 pages for each accused product is arbitrary, unworkable, and would substantially prejudice Papst's ability to prosecute its claims.  The Court in *e-Watch v. Apple, Inc. et al.*, Case No. 2:13-cv-01061-JRG-RSP, (E.D. Tex.), reached the same conclusion, rejecting the page limits proposed by several of the same defendants– Apple, LG, ZTE, Samsung, Huawei–in favor of a limitation allowing 15% of source code for each accused product.  (Ex. 3, Docs. 129 at 2 & 133 ¶ 10(e).)

Papst anticipates that it will need to review and rely on the source code of each accused product to prove infringement of the patents-in-suit.  Without knowing the volume of source code (i.e., the total number of pages required to print the source code file) associated with each accused product, it is impossible to know whether a pre-determined number of pages will be adequate to print the relevant portions of the source code required to prove infringement.  The amount of code in a particular source code file (and the number of pages required to express that code in printed form) can vary widely from product to product.  Further, in addition to actual "code," source code files often contain extraneous formatting, comments, and spacing that greatly increases page count when the files are printed.  As a result, arbitrarily limiting Papst to printing a pre-determined number of pages creates a significant risk that Papst will not be able to obtain the evidence it needs.

Defendants' proposal also ignores that this case currently involves hundreds of accused products, each of which rely on source code to operate.  Additionally, each product may be sold with a different version of source code at different times during the product's life cycle.  Given the sheer volume of source code at issue in this case, limiting the printing of source code 200 pages per accused product would substantially prejudice Papst's ability to prove infringement.

Papst's proposal to limit the printing of source code to 15% of the code produced for each product significantly limits the amount of source code that can be printed without imposing arbitrary limits that prejudice Papst's ability to prove its case. Thus, if the volume of the source code for particular product is small, the number of pages allowed for printing is also small. Likewise, if the relevant source code file is larger, Plaintiffs are allowed additional printed pages. Determining the allowed volume for printing is straightforward: a simple UNIX command quickly provides the total number of lines in a particular source code file to which the 15% factor can be applied.

Further, the parties have agreed to methods for resolving any disputes regarding the printing of source code.  Unlike the Court's Sample Protective Order, which allows the receiving party make and label the printouts, the parties' agreed provisions provide that the producing party may withhold disputed printouts from production for a limited time to allow it seek further protection from the Court.  Given these protections, arbitrary limits on printing of source code simply are not necessary.

The Court's Sample Protective Order allows a receiving party to make a reasonable number of printouts and photocopies of source code material.  (Sample Order ¶ 10(h).)  Papst's proposal provides Defendants with event more protection than the Sample Order by imposing concrete, calculable limits on printing.  Consequently, this Court should adopt Papst's proposal.

**B.  Defendants' Arguments**

The dispute between Plaintiff and the Defendants regarding printing of the source code centers on whether the limit should be measured by a percentage of the source code produced or based on the easily countable number of pages of printed source code proposed by Defendants. Defendants' proposal to Plaintiff included the limit of the number of pages for each accused product, but invited Plaintiff to identify a number of pages that was reasonable. Instead of

7

acknowledging the invitation, Plaintiff committed to a measure based on a percentage, which Defendants know to be unworkable.   Even when the page-limit is set at 200 pages for each accused product, that limit would permit Plaintiff to print many thousands of pages from several individual Defendants, who are each subject to infringement assertions against twenty or more different products.   This is clearly reasonable from Defendants perspective, and Plaintiff has not offered a workable limit from its perspective.   Moreover, Defendants' proposal maintains the clause stating that a "reasonable request for agreement [to produce over 200 pages] shall not be withheld." Thus, should any limit become a burden on Papst, the protective order envisions that Papst make reasonable requests for additional printed pages.

Papst's proposal that it be able to print a percentage of the code produced for each accused product provides no readily quantifiable limitation.   Papst provides no basis for why a percentage is an appropriate means to define the scope of relevant source code and offers no means on how a percentage is to be calculated.   As a result, Papst essentially proposes a moving target that gives it a nearly unfettered ability to demand whatever volume of source code it deems to be under its unquantifiable percentage.   This would undermine the critical protections necessary to ensure the confidentiality of the Defendants' highly valuable source code and thwart related provisions of the protective order clarifying that paper hardcopy printouts are not intended to allow printing of large quantities of source code "in order to review blocks of Source Code elsewhere in the first instance."

The page-limit based proposal offered by Defendants is a standard method to prevent abusive printing of broad swaths of unneeded source code.   The Defendants' proposal is consistent with page cap provisions entered in other protective orders.   *See*, *e.g.*, *Unwired Planet LLC v. Apple Inc.*, Case No. 12-cv-505, 2013 WL 1501489, at *7 (D. Nev. April 11, 2013); *First*

*American CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-cv-132, Dkt. 128 at ¶ 24 (E.D. Tex. May 9, 2011)[4]; *see also Smartflash LLC v. Apple Inc.*, Case No. 6:13-cv-447, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014) ("Smartflash has offered no competing page limit proposal for printing source code. Given the highly sensitive nature of source code, there is good cause for some restrictions on printing.").   Plaintiff can offer no reason for why it cannot even propose a reasonable limit on the number of pages of source code that can be printed per accused product. Given the numerous accused products per Defendant in this case which effectively multiplies the limit, the limit to 200 pages of printed pages of source code per accused product is sufficient.

## IV.   DISPUTE NO. 3: ¶ 10(j) – Provisions requiring the logging of persons with access to Source Code and the logging of the location of Source Code storage

| Papst's Proposal | Named Defendants' Proposal |
| --- | --- |
| Court's Sample Protective Order, i.e. None. | The receiving Party's outside counsel . . . *shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon one (1) day's advance notice to the receiving Party by the producing Party, the receiving Party shall provide a copy of this log to the producing Party*; |

### A.  Papst's Arguments

Defendants' proposal to require Papst to conduct further logging of persons with access to source code and the storage locations of source code is unnecessary and serves only to increase the administrative burden and cost of litigating this matter.   The Court in *e-Watch v. Apple, Inc. et al.*, Case No. 2:13-cv-01061-JRG-RSP (E.D. Tex.), reached the same conclusion, rejecting even lesser logging burdens proposed by several of the same defendants–Apple, LG, ZTE, Samsung, Huawei.  (Ex. 3, Docs. 129 at 6 & 133 ¶10(e).)

---

[4] Thompson Decl., Ex. D.

The agreed portions of the proposed Protective Order already adopt numerous logging and disclosure requirements–many of which are in excess of that required by the Court's Sample Protective Order–including (1) requiring written identification of all persons (including outside counsel) who will review a party's source code two (2) days in advance (¶10(e)); (2) requiring all persons (including outside counsel) who view source code in a secure facility to sign a log before being permitted access (¶ 10(e)); (3) requiring all outside consultants or experts with access to source code to sign an undertaking agreeing to be bound by the terms of the Protective Order (¶¶ 5(e) & 10(a)); (4) requiring the disclosure of all outside consultants or experts with access to source code to all parties with an opportunity to object to disclosure of source code to a particular expert or consultant ((¶ 5(e)); and (5) requiring the receiving party to maintain a log of all source code files that are printed.  The parties also have agreed that the receiving party will be limited to making five (5) copies of source code printouts and that all source code material will be stored in a locked room or cabinet in a manner that prevents unauthorized access.  (¶ 10(j-k).)

Given these ample protections, and the burdens they impose, Defendants' proposal to impose additional and burdensome logging should be rejected.

### B.  Defendants' Arguments

The Defendants' proposal includes a provision for logging access to and copying of source code, provisions necessary for transparency in Papst's compliance with the protective order.   Maintaining such logs ensures that receiving parties are abiding by the access and copying restrictions applicable to source code.  The logs would simply record basic access and copying information in a reasonable and workable way to ensure compliance with the source code provisions.   The logging requirement is straight-forward, easy to implement, and not burdensome.  Indeed, similar provisions have been included in Protective Orders issued by this Court and others.  *See*, *e.g.*, *PersonalWeb Techs, LLC v. Apple, Inc.*, No. 6:12-cv-660, Dkt. 37 at

18-19 (E.D. Tex. April 5, 2013)[5] (agreed provisions of the protective order required the parties to identify every individual who accesses the source code, including a log of when they arrive and depart from the source code room, and to provide the log to the producing party with one day's notice); *ContentGuard Holdings, Inc. v. Apple, Inc.*, Case No. 2:13-cv-1112-JRG, Dkt. 152 at ¶ 11(c)(v) (E.D. Tex. June 6, 2014) (same)[6]; *EON Corp. IP Holdings, LLC v. LG Electronics MobileComm USA, Inc.*, Case No. 6:12-cv-941-RWS-JDL, Dkt. 31 at ¶ 11(c)(vii) (E.D. Tex. July 15, 2013) (same)[7]; *SKF Condition Monitoring, Inc. v. Invensys Sys.*, No. 07-cv-1116, 2010 U.S. Dist. LEXIS 35130, at *17 (S.D. Cal. April 5, 2010) (including a provision in the protective order for a source code access log "identifying, for each and every time any Source Code is viewed, or accessed at the secure location: (i) the name of each person who accessed the Source Code; (ii) the date and time of access; (iii) the length of time of access; (iv) whether any hard copies of any portion of the Source Code were printed."); *First American Corelogic, Inc. v. Fiserv, Inc.*, No. 2:10-cv-132, Dkt. 128 at ¶¶ 22, 27 (E.D. Tex. May 9, 2011)[8] ("shall identify all individuals who will be given access to the Source Code at least five (5) days prior to any inspection" "shall keep a log that records the identity of each individual…to whom each hard copy of the Source Code is provided"). This log, and the producing party's ability to quickly access the log to address any unauthorized distribution of source code, is essential to the protection of this key intellectual property.  The Defendants' source code is a highly sought-after, highly sensitive trade secret, the disclosure of which could be quite harmful to the Defendants.  Declaration of Beth Kellerman, ¶¶ 3-9.  Should a Defendant suspect any potential breach of security, time is of the essence. The Defendant must be able to rapidly identify the

---

[5] Thompson Decl., Ex. E.
[6] Thompson Decl., Ex. C.
[7] Thompson Decl., Ex. B.
[8] Thompson Decl., Ex. D.

scope of information that was compromised and who accessed the information to seek immediate

relief against that individual and/or entity. This is not possible without an accurate, up-to-date

log that is readily available.  Papst has provided no rational basis for not logging access and

copying information.

**V.    DISPUTE NO. 5: ¶ 11 – Provisions limiting the participation of individuals with access to Highly Sensitive Material in proceedings before the U.S. Patent & Trademark Office**

| Papst's Proposal | Named Defendants' Proposal |
|---|---|
| Absent the written consent of the producing Party, any attorney representing a ***Party***, whether in-house or outside counsel, and any person associated with a ***Party*** and permitted to receive the ***other*** Party's Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the ***field of the invention of the patents-in-suit*** on behalf of ***the receiving Party*** or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals. To ensure compliance with the purpose of this provision, ***each Party*** shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of ***the Party*** or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the ***field of the invention of the patents-in-suit***.  For sake of | Absent the written consent of the producing Party, any attorney representing ***Papst***, whether in-house or outside counsel, and any person associated with ***Papst*** and permitted to receive the ***another*** Party's Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the ***accused instrumentalities*** on behalf of ***Papst*** or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals. To ensure compliance with the purpose of this provision, ***Papst*** shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of ***Papst*** or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the ***accused instrumentalities***.  For sake of clarity, any attorney representing ***Papst***, whether in- |

| | |
|---|---|
| clarity, any attorney representing *a Party*, whether in-house or outside counsel, and any person associated with *a Party* and permitted to receive another Party's HIGHLY SENSITIVE MATERIAL, *may* participate, supervise and assist in any and all proceedings before the U.S. Patent and Trademark Office related to *the Party's* patents-in-suit, including without limitation *Inter Partes* Review (IPR) proceedings, *even if they have received the other Party's HIGHLY SENSITIVE MATERIAL, provided that they do not participate or assist in the any claim drafting or amendment of claims in such proceedings.* | house or outside counsel, and any person associated with *Papst* and permitted to receive another Party's HIGHLY SENSITIVE MATERIAL, *may not* participate, supervise and assist in any and all proceedings before the U.S. Patent and Trademark Office related to *Papst's* patents-in-suit *or any related patents or applications*, including without limitation *Inter Partes* Review (IPR) proceedings, *where* amendment of claims in such proceedings *is permitted*. |

## A.  Papst's Arguments

Papst's proposed language simply adopts the language of the Court's Sample Order and adds a sentence clarifying that any Party's outside counsel may participate in *Inter Partes Review* (IPR) provided that they do not participate or assist in any claim drafting or amendment of claims in such proceedings.  In contrast, Defendants' proposed language seeks to extend the prosecution bar to exclude only Plaintiff's counsel from participating in any IPR, depriving Plaintiff of its choice of counsel and requiring only Plaintiff to hire another set of separate counsel to handle validity matters for the IPR proceedings, thus unnecessarily duplicating work and driving up costs for Plaintiff, without imposing the same burdens and costs on Defendants.

Significantly, many of these Defendants[9]—Apple, LG, ZTE, Samsung, Huawei—have previously and expressly agreed to allow counsel for a plaintiff to participate in IPR proceedings when they submitted a proposed protective order with the following provision in another case, *e-Watch v. Apple, Inc. et al.,* Case No. 2:13-cv-01061-JRG-RSP (E.D. Tex.):

---

[9] Lenovo/Motorola Mobility were not participants in the e-Watch case and therefore were not involved in the proposal.

> For sake of clarity, all attorneys of either Party may participate, supervise and assist in any and all Inter Partes Review (IPR) proceedings related to the patents-in-suit, even if they have received and/or reviewed the other Party's "RESTRICTED ATTORNEYS' EYES ONLY" and/or "RESTRICTED CONFIDENTIAL SOURCE CODE," provided that they do not participate or assist in any claim drafting or amendment of claims in such IPR proceedings."

(Ex. 3, Doc. 129-2 at 15 (Defs.' Proposed Protective Order).)  Plaintiff's proposal for this case is nearly identical and includes the limitation preventing Plaintiff's counsel from participating in amending claims. There is no rational basis for Defendants to reject Plaintiff's current, similar proposal given the concession by Plaintiff not to participate in the amending of claims.

Moreover, Defendants cannot meet their burden of demonstrating good cause to impose a sweeping prosecution bar rather than the narrowly tailored prosecution bar advocated by Plaintiff.  In evaluating whether there is good cause to impose a prosecution bar, the Court must balance the risk of inadvertent disclosure or competitive use of confidential information against the potential harm to the opposing party in denying its choice of counsel. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  Whether a risk of inadvertent disclosure or competitive use exists depends 'on the extent to which counsel is involved in competitive decisionmaking with its client. *Id.*  While attorneys substantially engaged with prosecution are regularly engaged in competitive decisionmaking, *id.* at 1380, involvement in post-grant proceedings does not raise the same risk of competitive misuse as does involvement in prosecution.  *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184-85 (D. Del. 2010).  Post-grant proceedings, including reexamination, *inter partes* review, and covered business method review, all involve assessing the patentability of existing claims.  35 U.S.C. §§ 302, 311; AIA § 18(a)(1). Further, only narrowing claim amendments may be made during post-grant proceedings, 35 U.S.C. §§ 305, 314(a); AIA § 18(a)(1), and, even further, Plaintiff's proposal expressly restricts Plaintiff from participating in the amendment of claims.   There is therefore no risk that

confidential information learned in litigation will be competitively used to draft claims that read on Defendants' products in an IPR proceeding. *See, e.g., Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008) (noting that "unlike prosecution of an initial patent application, the Patent Act expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent"). *See also Mirror Worlds, LLC v. Apple, Inc.*, Case No. 08-88, 2009 WL 2461808, at *2 (E.D. Tex. Aug. 11, 2009) (noting that "[c]laims can only be narrowed during reexamination; they cannot be broadened" and therefore concluding that "the risk of harm to Apple is already greatly limited"); *Document Generation Corp. v. Allscripts*, Case No. 08-479, 2009 WL 1766096, at *2 (E.D. Tex. June 23, 2009) (stating that "[b]ecause the reexamination process prohibits claim amendments that would enlarge the scope of the initial patent, Defendants' fears of expanded claim scope are largely misplaced").

The attenuated risk of inadvertent disclosure or competitive use must be balanced with the potential harm in denying Plaintiff its choice of counsel in post-grant proceedings. *See Xerox Corp.*, 270 F.R.D. at 185. Such potential harm includes "[f]orcing [P]laintiff to rely on less knowledgeable counsel ... [, thereby] increas[ing] costs and duplicat[ing] effort" and preventing Plaintiff from "formulating a coherent and consistent litigation strategy." *Id.* The risk of inadvertent disclosure or competitive use of Defendants' confidential information is outweighed here by the potential harm to Plaintiff by denying its choice of counsel in IPR proceedings.

Thus, Plaintiff's proposal should be adopted. Plaintiff's proposal includes a restriction that Plaintiff may "not participate or assist in any claim drafting or amendment of claims in such proceedings." Federal courts have consistently held that litigation counsel may continue representation of a patent holder in IPR proceeding, so long as the participation is limited to trial-

like activities and not activities such as advising on, preparing, drafting, or amending claims.[10]

With these safeguards included, the prosecution bar should not apply to reexamination and

similar proceedings since the risk to Defendants does not outweigh the prejudice to Plaintiff.  Ex.

4, *Smartflash LLC v. Apple Inc.*, Case No. 6:13-cv-00447, Doc. 139 at 4 (E.D. Tex. May 12,

2014) (citing *Mirror Worlds*, 2009 WL 2461808 at *2) ("[T]he risk of inadvertent misuse of

Apple's confidential information does not outweigh the prejudice to *Mirror Worlds* if the

prosecution bar is applied to reexamination proceedings.").

### B.  Defendants' Arguments

While all parties agree that some prosecution bar should be implemented, the parties

dispute whether Papst's attorneys or Papst-affiliated individuals with access to Highly Sensitive

---

[10] *See, e.g., Knauf Insulation, LLC v. Johns Manville Corporation*, 2015 WL 9307952, at *2-3 (S.D. Ind. 2015) (granting patentee's motion to amend the protective order to allow patentee's trial counsel to participate in an IPR proceeding commenced by the accused infringer, so long as trial counsel was not involved with drafting claim amendments in the IPR); *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 2015 WL 7257915 (D. Del. 2015) (rejecting accused defendant's contention that the protective order should bar counsel from participating in post-grant proceedings); *Voice Domain Technologies, LLC v. Apple, Inc.*, 2014 WL 5106413, at *9 (D. Mass. 2014) (finding that prosecution bar could permit counsel to participate in post-grant proceedings in the PTO but not assist with claim amendments or proposing new claims); *EPL Holdings, LLC v. Apple, Inc.*, No. C-12-04306 JST (JSC), 2013 WL 2181584, at *3-4 (N.D. Cal. May 20, 2013) (holding that, consistent with the Model Order's directives, litigation counsel "may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims"); *Evolutionary Intelligence, LLC v. Foursquare Labs*, 2014 WL 1311970, at *1-4 (N.D. Cal. 2014) (allowing patentee's litigation counsel to participate in IPRs initiated by third-parties, with the restriction that she could not participate in drafting or amending any claims); Ex. 5, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, C 11-6391 SI; C 12-0865 SI; C 12-5501 SI, Doc. 199 (Order on Motion to Clarify or Modify Protective Order) (N.D. Cal. June 11, 2013) at *2-4 (allowing litigation counsel to participate in the IPR proceeding so long as counsel did not participate in activities relating to the patent claims as it would "strike the appropriate balance to protect against inadvertent disclosure and allow [the patentee] to benefit from the expertise litigation counsel has developed with respect to the prior art"); Ex. 6, *Grobler v. Apple Inc.*, Case No. 12-01534 JST (PSG), 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013) (recognizing that review proceedings are "really nothing more than an extension of the litigation in the district court," such that "allowing a limited role for a patentee's litigation counsel while prohibiting counsel from crafting or amending claims is only reasonable").

Material should be free to participate and assist in prosecution and *Inter Partes* review (IPR) activities related to the accused instrumentalities.  Notably, there are currently 13 IPRs pending at the PTO related to the asserted patents in this litigation—and more IPR petitions may be filed. The Federal Circuit recognizes that attorneys should not use sensitive confidential information produced in litigation in activities before the PTO.  *In re Deutsche Bank Trust*, 605 F.3d 1373, 1377-78 (Fed. Cir. 2010).  Courts routinely impose a bar against the use of confidential information by the receiving party in proceedings before the PTO due to the potential harm that the attorney may use the information to seek to broaden the scope of a patent beyond what the attorney would seek without access to the information, and tailor the patent application to claim the disclosing party's technology, consciously or not. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 546 F. Supp. 2d 951, 955-56 (S.D. Cal. 2008).  This provision is of critical importance here due to Papst's past and continuing prosecution activities regarding the patents-in-suit.  For example, Papst retains a pending patent application before the PTO within the same family as the asserted patents.  *See U.S. Patent Application Serial No.* 14/859,266. Moreover, the potential for Papst to seek to amend the claims of the patents-in-suit within any *Inter Partes* Review proceeding should not be understated.  *See*, *e.g.*, *http://www.uspto.gov/blog/director/entry/further_insight_provided_on_ptab* (identifying 192 motions to amend in instituted IPR proceedings).

The Defendants' proposed prosecution bar is reasonable and necessary to protect from competitive harm, which would arise from use of Highly Sensitive Material in drafting and restructuring claims.  For example, Papst has identified in its infringement contentions against Apple a number of products, such as the iPhone, iPad, and iPod touch, for which Papst will seek discovery of confidential information—including the source code for the iOS operating system

that runs on such products.  The Defendants' proposed language prohibits Papst's attorneys and affiliated personnel from participating in prosecution or *Inter Partes* Review of patents that concern technology relevant to this matter, while simultaneously having access to Highly Sensitive Material produced in this case.

By contrast, Papst proposes superficial limits on its attorneys' ability to participate and assist in patent prosecution and post grant proceedings.  In particular, Papst's proposal would allow its attorneys to participate and assist in IPR proceedings before the PTO as along as the individuals "do not participate or assist in any claim drafting or amendment of claims in such proceedings."  Given the nature of the patent prosecution and *Inter Partes* Review proceedings which expressly contemplate that a patent-owner may seek amendment of the claims, individuals working for Papst should not be simultaneously allowed to access to the Defendants' Highly Sensitive Material and "participate or assist" in IPR activities.  Ultimately, preventing Highly Sensitive Material from influencing an attorney's prosecution and post-grant activities is nearly impossible and unenforceable, as the Federal Circuit clearly observed in *In re Deutsche Bank*. *Id*. at 1380-81.  *In Deutsche Bank*, the Court recognized that an attorney in possession of an opponent's confidential information should be barred from certain activities before the PTO due to the high risk of even inadvertent misuse of that information.  *Id*.  Justifying this bar, the Federal Circuit reasoned that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Id*. at 1378.  Thus, Papst's proposal presents exactly the sort of untenable situation the Federal Circuit has found to warrant a prosecution bar: "Courts have recognized [] that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality … may not prevent inadvertent compromise." *Id*.

18

Given Papst's proposal, the risk is too high that Papst's attorneys who have access to Highly Sensitive Materials will—even unintentionally—provide insight as to whether and how to amend the claims in IPR proceedings in an attempt to cover product features and implementations disclosed in confidential information while avoiding prior art.  This is the precise activity that the prosecution bar is designed to prevent and is therefore unacceptable. Papst's proposed language would effectively render the prosecution bar meaningless and is contrary to typical orders issued from this Court and others.  *MicroUnity Sys. Eng'g, Inc. v. Dell. Inc.*, Case No. 04-cv-120, 2005 WL 2299455, at *3 (E.D. Tex. August 1, 2005) (holding that the prosecution bar applies equally to reexaminations as it does to new applications and noting that litigation counsel with access to defendants' confidential information "will inevitably [amend or supplement claims to distinguish prior art] in a way that they believe preserves litigation options with respect to [defendants'] products"); *Keystone Autonics, Inc. v. Sirius Satellite Radio Inc.*, Case No. 2:07-cv-61, Dkt. 77 at ¶¶ 34 (E.D. Tex. March 4, 2008)[11] ("shall not…assist in the prosecution of or advise others (including co-counsel)"); *Unwired Planet LLC*, 2013 WL 1501489, at *3 ("Apple also points out that courts have recognized that no matter how well intentioned an attorney may be, it is often impossible for a person to avoid taking information learned in litigation, for example, and not use it for another purpose, such as patent acquisition. This is the very reason for prosecution bars in patent cases, especially in this case where Unwired's sole reason for existence is to acquire patents and sue companies like Apple.")

Furthermore, the limitations proposed by the Defendants are consistent with the very strict patent prosecution provisions already in place in Papst's ongoing Multi District Litigation in the District of Columbia that has been pending for almost a decade.  *In re Papst Licensing*

---

[11] Thompson Decl., Ex. F.

*GMBH & Co. KG Litigation*, Case No. 1-07-mc-00493, MDL No. 1880.   In the MDL case*,* similar issues arose concerning a prosecution bar.  The end result was that Papst was barred from marking any documents as "Prosecution Bar," but the defendant Camera Manufacturers were not.  The protective order in the MDL litigation also states that such confidential information is only available to "the Parties' respective Outside Counsel and regular and temporary employees of such Outside Counsel ***who are not involved in <u>any way</u>*** in patent prosecution related ***in <u>any</u>***

***<u>way</u> to the subject matter of this litigation*.*"   *Id*. at ¶ 10(a) (emphasis added).   A similar provision also exists for pertinent litigation consultants.  *Id*. at ¶ 10(b).

During oral argument concerning a Protective Order for the MDL case, counsel for Papst represented that Papst did not expect to mark any documents as "Prosecution Bar" (or even "Outside Counsel's Eyes Only"):

> MR. WHITE [counsel for Papst]:  . . . . going back to the three-tiered levels of confidentiality, okay, Papst is going to find itself in a position where under the definitions of prosecution bar, which we understand that <u>Papst is not going to or does not expect to</u> —  I talk with my hands too much — does not expect <u>to file prosecution bar information</u>, and then we have the Highly Confidential - Outside Counsel's Eyes Only information and you have to be in a competitive situation under the definition there to stamp your materials in that fashion, so <u>Papst is going to be left with confidential information only that it can stamp</u>.

Thompson Decl., Ex. G (Tr. of Hrg. March 25, 2008) at 57:6-16.  Judge Collyer elaborated on the reasons:

> MR. WHITE:  Sure. I am reading from the bottom of page 6, line 1 through 6.
>
> (Reading) THE COURT: . . . .  Let me reiterate what I understand to be the facts.  Make sure that these facts are true.  The Papst — that <u>Papst owns patents but not products</u>; is that correct?
>
> (Reading) MR. WHITE:  That's correct, Your Honor.

(Reading) THE COURT:  Okay.  That's fine.  Then the three designated in-house personnel at Papst under paragraph 8(b) can get this information <u>as long as they're not prosecuting any patents</u> during the course of the litigation.

*     *     *

THE COURT:  Yeah, which is your outside counsel only, because that's your — that's your intellectual property.  <u>That's their intellectual property, to be more precise, so it's not using the intellectual property that belongs to the Defendants for Papst or any of its in-house or out-house counsel to prosecute patent applications</u> during the course of this litigation.

Thompson Decl., Ex. G (Tr. of Hrg. March 25, 2008) at 59:17-60:6; 60:17-23.

The final Protective Order entered by Judge Collyer (and still in effect today) provided:

The Camera Manufacturers and third parties may designate materials as "Highly Confidential – Prosecution Bar Information," but <u>under no circumstances shall Papst as the producing party designate any materials as "Highly Confidential – Prosecution Bar Information"</u> absent agreement of the Parties or further Order of the Court.

Thompson Decl., Ex. H, Dkt. 35 at ¶ 5 (4/9/2008 Protective Order).

The circumstances in the MDL case are the same in these Texas actions.  The Defendants make and sell products.  Papst may seek to cover those products with future patent claims.  Papst would be unfairly advantaged if it could use highly sensitive information produced in these litigations about those products.  On the other hand, Papst does not make or sell any products, so there is no danger of the Defendants seeking future patent claims to cover nonexistent products. Papst is merely in the business of asserting and licensing patents—it is not a practicing entity, and thus Papst will not produce confidential product information that would be relevant to any activities of Defendants in PTO proceedings.  Accordingly, a one-way bar is appropriate.  It makes sense that the prosecution bar in this litigation only apply to Papst attorneys and personnel—not the Defendants' attorneys. *See Smartflash*, 2014 WL 10986995, at *1 ("Since

Smartflash does not currently sell any products, there is no corresponding risk of inadvertent disclosure and misuse. Therefore, the prosecution bar should be limited to Smartflash's attorneys who review Defendants' highly sensitive information.")

In addition, the Defendants' proposal to have the prosecution bar apply as to the "accused instrumentalities" rather than Papst's proposed "field of the invention of the patents-in-suit" is appropriate given that the latter is not readily definable.  Determining what constitutes the "field of the invention" invites dispute given its vagueness, so the better option is for the prosecution bar to apply to those products that Papst actually accuses of infringement.  Moreover, by limiting prosecution activities based on the accused instrumentalities, the protective order would prevent Papst personnel from using Defendants' highly sensitive product information in the prosecution of claims within patents covering other technologies owned by Papst that are not asserted in these actions.

## VI.   DISPUTE NO. 6: ¶ 14 – Provisions preventing the Plaintiff from sharing a Defendant's Designated Material to other Defendants absent permission from the producing Defendant

| Papst's Proposal | Named Defendants' Proposal |
|---|---|
| Court's Sample Protective Order, i.e., None. | *To the extent that any one of Named Defendants in this litigation provides DESIGNATED MATERIAL to Plaintiff, Plaintiff shall not share that material with the other Named Defendants and/or with the experts or consultants of any other Named Defendant in this litigation, absent express written permission from the producing Named Defendant.* |

### A.  Papst's Arguments

Although the agreed portion of the proposed Protective Order provides for three (3) levels of confidentiality, including designations that restrict disclosure solely to outside counsel and outside experts, Defendants seek to add yet another administrative burden to this case

by preventing Papst from using discovery produced by one Defendant with regard to claims or defenses concerning another Defendant.  This Court should reject this effort.

Generally, "[d]ocuments made available to one party in a suit must be made available to all parties . . . ." John Kimpflen, Sally Necheles, et al., 10A Fed. Proc., L. Ed. § 26:637. This practice is expressed in the agreed portions of the proposed Discovery Order in this case, which requires "each party" to produce documents and information "to every other party." (Doc 69-1, Proposed Discovery Order ¶¶ 1 & 3). Despite the terms of the Discovery Order, Defendants apparently have agreed that they will produce documents in this matter only to Papst and not to each other.  Prohibiting Papst from using documents produced by one defendant with respect to claims or defenses regarding another defendant would unfairly prejudice Papst's ability to prove its claims and to challenge Defendants' defenses and counterclaims.

For example, a producing defendant may have conducted a marketing survey regarding the desirability of the patented features of its products that would be relevant and probative of the desirability of the same features of other defendants' products.  Under Defendants' proposal, however, Papst's experts would be prohibited from relying the marketing survey in their analysis of the products of any defendant, other than the producing defendant.  Additionally, claims against all defendants relate to products with components that are compliant with Picture Transfer Protocol (PTP) and Media Transfer Protocol (MTP).  Because the products implement common protocols, information from a producing defendant regarding the requirements of such protocols would be relevant in the analysis of the products of other defendants.

Further, the only justification offered by Defendants for their proposed restriction is the claim that such a restriction is necessary to protect Defendants' confidential information.  The

agreed portions of the Protective Order, including three levels of confidentiality designations, are more than sufficient to protect the confidentiality of Defendants' information and do not justify denying Papst the ability to use the evidence it needs to prove its claims.

## B. Defendants' Arguments

Papst proposes that it should indiscriminately be permitted to share one Defendant's Designated Material with the counsel and experts retained by other Defendants. Defendants object to providing Papst with such discretion absent express written permission from the producing Defendant because many of the Defendants are direct competitors who could suffer severe competitive harm from such disclosures of highly confidential and trade secret information. In the event Papst desires to disclose the Designated Material of a Defendant to the representatives of another Defendant, the protective order should require that Papst obtain the producing Defendant's consent. The Defendants' proposal for this provision is consistent with those entered in other cases. *See, e.g.*, *EON Corp. IP Holdings, LLC v. LG Electronics MobileComm USA, Inc.*, Case No. 6:12-cv-941-RWS-JDL, Dkt. 31 at ¶ 6(f) (E.D. Tex. July 15, 2013).[12]

Permitting Papst unfettered ability to share any one Defendant's Designated Material with any other Defendant's hired expert effectively forces all Defendants to only select experts that are acceptable to every single other Defendant. For instance, Samsung may wish to hire an expert who is objectionable to Apple on the basis of that expert's other current or recent work. If Papst's proposed language on this provision is adopted, Apple may be forced to object to Samsung's desired expert. Papst would therefore hamper each Defendants' ability to effectively defend itself.

---

[12] Thompson Decl., Ex. B.

Moreover, there is likely no need for Plaintiff to share one Defendant's confidential information with another.  Plaintiff has already established the practice in this case of supplying each Defendant with separate infringement contention claim charts regarding that Defendant's products and not serving those contentions on the other Defendants.  In so doing Plaintiff has already acknowledged that it believed it had no need to share those infringement contention charts amongst the entire group of defendants.  To the extent Plaintiff does encounter a need to share one Defendant's confidential information with another Defendant or the group of defendants, the Defendants' proposal expressly allows for the producing Defendant to provide permission for the Plaintiff to do so.  Thus, as is common in consolidated cases, the Defendants' proposal strikes an appropriate balance that ensures protection of Defendants' confidential information.

Dated:  June 22, 2016
Respectfully submitted,

### For Plaintiff

By:  /s/ Christopher V. Goodpastor
Christopher V. Goodpastor
State Bar No. 00791991
Andrew G.  DiNovo
State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
Jay D. Ellwanger
State Bar No. 24036522
DINOVO PRICE ELLWANGER &
   HARDY, LLP
7000 N.  MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone:  (512) 539-2626
Facsimile:  (512) 539-2627
Email:  cgoodpastor@wattsguerra.com
         adinovo@dpelaw.com
         aprice@dpelaw.com

### For Defendants

/s/ Clayton Thompson
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

David Alberti
dalberti@feinday.com
Clayton Thompson
cthompson@feinday.com
Marc Belloli
mbelloli@feinday.com
FEINBERG DAY ALBERTI &
THOMPSON LLP

25

jellwanger@dpelaw.com

T. John Ward, Jr.
State Bar No. 00794818
Claire Abernathy Henry
State Bar No. 24053063
Wesley Hill
State Bar No. 24032294
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, Texas 75606-1231
Telephone:  (903) 757-6400
Facsimile:   (903) 757-2323
Email:  jw@wsfirm.com
        claire@wsfirm.com
        wh@wsfirm.com

ATTORNEYS FOR PLAINTIFF PAPST
LICENSING GMBH & CO. KG

1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone: (650) 618-4360
Facsimile: (650) 618-4368

ATTORNEYS FOR DEFENDANT
APPLE INC.

*/s/ Herbert H. Finn*
Herbert H. Finn (Illinois Bar # 6205685)
Jonathan E. Giroux (Illinois Bar # 6306024)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400
Fax: (312) 456-8435
finnh@gtlaw.com
girouxj@gtlaw.com

ATTORNEYS FOR DEFENDANTS LG
ELECTRONICS, INC., LG ELECTRONICS
USA, INC., AND LG ELECTRONICS
MOBILECOMM U.S.A., INC.

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS,
P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5092

Stanley Young
syoung@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

ATTORNEYS FOR DEFENDANTS

26

HUAWEI TECHNOLOGIES CO., LTD. AND
HUAWEI TECHNOLOGIES USA, INC.

*/s/ Eric Klein*
Fred I. Williams
Texas Bar No. 00794855
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
TEL: (512) 542.8430
FAX: (512) 236.3252
fwilliams@velaw.com

Eric J. Klein
Texas Bar No. 24041258
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
TEL: (214) 220-7782
FAX: (214) 999-7782
eklein@velaw.com

ATTORNEYS FOR DEFENDANTS
LENOVO (UNITED STATES) INC.
AND MOTOROLA MOBILITY LLC


By: */s/ Patrick J. Kelleher*
Patrick J. Kelleher
Carrie A. Beyer
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
patrick.kelleher@dbr.com
Phone: (312) 569-1375
Fax: (312) 569-3375

ATTORNEYS FOR SAMSUNG
ELECTRONICS CO., LTD. AND SAMSUNG
ELECTRONICS AMERICA, INC.

By: */s/ Eric H. Findlay*
Eric H. Findlay (TX Bar No. 00789886)
FINDLAY CRAFT, P.C.

102 N. College Ave., Suite 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137 FAX
efindlay@findlaycraft.com

Scott R. Miller
Sheppard Mullin Richter & Hampton LLP
333 S Hope Street
43rd Floor
Los Angeles, CA 90071
213-617-4177
Fax: 213-443-2817
Email: smiller@sheppardmullin.com

ATTORNEYS FOR DEFENDANT
ZTE (USA) INC.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 22nd day of June 2016, with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Clayton Thompson*
Clayton Thompson